IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| John and Nashrin Dashtara, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:08cv1060(GBL) |
| ) | |
| Wachovia Bank, N.A., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Plaintiffs John and Nashrin Dashtara's Motion for Summary Judgment. This case concerns Plaintiffs' breach of contract and conversion claims against Defendant Wachovia Bank, N.A. ("Wachovia") for dishonoring Plaintiffs' presentment of three certificates of deposit ("CDs"). There are three (3) issues before the Court. The first issue is whether Plaintiffs are entitled to summary judgment on both claims where Plaintiffs presented facially-valid CDs and Defendant dishonored the presentment despite Defendant's lack of affirmative evidence that it had ever paid the certificates. The second issue is whether the statute of limitations period has run on all unpaid interest due more than five years before the filing of the Complaint where Wachovia was to make monthly interest payments to Plaintiffs but an automatic renewal provision states that each year any unpaid interest will be rolled into the principal. The third issue is whether the Court should calculate the accrued interest from 1996 through

2001 using Wachovia's "connect-the-dots" method or the prevailing market rate as reported by the *Wall Street Journal* where the terms of the CDs provide that interest will be calculated at Wachovia's "current offering rate" on the maturity date each year but Wachovia failed to maintain records of its current offering rates for May 30, 2001 and earlier.

The Court grants summary judgment for Plaintiffs in the amount of $420,200.08, plus interest, for three (3) reasons. First, the Court holds that possession of valid certificates raises a presumption of nonpayment and Wachovia's reliance upon its absence of records is insufficient to rebut the presumption. Second, the Court holds that the statute of limitations has not run on unpaid interest due more than five years before the filing of the Complaint because the automatic renewal provision created "new" certificates each year at the maturity date and the unpaid interest became part of the new certificates' principal. Third, the Court calculates the interest accrued from 1996 through 2001 using the certificate of deposit market rates reported in the *Wall Street Journal* because the Court ascertains that the description "current offering rate" refers to the prevailing market rates for dates that Wachovia no longer maintains in its records.

I. BACKGROUND

Plaintiffs John and Nashrin Dastara are customers of Defendant Wachovia Bank. Mr. and Mrs. Dashtara brought claims against Wachovia for dishonoring their presentment of three certificates of deposit. Plaintiffs now move for summary judgment on both their breach of contract and conversion claims.

On May 30, 1995, Mr. and Mrs. Dashtara went to a First Union Bank of Virginia branch in Vienna, Virginia, to obtain $250,000 in CDs.[1] The First Union issued three CDs, two in the amount of $100,000 and a third for $50,000. According to Plaintiffs, they purchased the CDs and then "promptly forgot about them." (J. Dashtara Certification ("Cert.") ¶ 8; N. Dashtara Cert. ¶ 8.)

Under the terms of the CDs, the Dashtaras were to receive monthly interest payments on the CDs. Neither Plaintiffs nor Defendant have produced any record of any interest ever being paid on the CDs.

According to Mr. Dashtara, in July 2008 he was cleaning out his home safe and discovered the three CDs for the first time since he purchased them. On July 10, 2008, Mr. Dashtara visited a Wachovia branch and presented the CDs for payment. Wachovia dishonored the presentment. The Dashtaras brought breach of contract and conversion claims against Wachovia for dishonoring

---

[1] First Union Bank of Virginia is the predecessor-in-interest to Wachovia.

the certificates. Plaintiffs now move for summary judgment on both claims.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

In reviewing a motion for summary judgment, the court views the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48.

A "material fact" is a fact that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might

affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Anderson*, 477 U.S. at 248. Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### III. ANALYSIS

#### A. Indebtedness on Certificates of Deposit

The Court grants summary judgment in favor of Plaintiffs because Defendant's lack of records as to the CDs is insufficient to overcome the presumption of nonpayment created by Plaintiffs' possession of the CDs.[2] Under Virginia law, a presumption of nonpayment arises in favor of the plaintiff where the plaintiff retains possession of the note sued upon. *See Schmitt v. Redd*,

---

[2] Defendant does not dispute Plaintiffs' ability to establish the elements of their breach of contract and conversion claims. Instead, Defendant argues payment as an affirmative defense and asserts that credibility questions create a genuine issue for trial as to whether the certificates of deposit have already been paid. As such, the Court's analysis focuses on Defendant's payment defense.

143 S.E. 884 (Va. 1928). Although the presumption of nonpayment arises, a defendant may rebut the presumption with evidence of payment. *See id.* at 886. Here, Plaintiffs sufficiently raise the presumption of nonpayment and Defendant fails to rebut the presumption. The Court addresses both points in greater detail below.

### 1. Plaintiffs - Presumption of Nonpayment

The Court holds that Plaintiffs' possession of three bank-issued certificates of deposit is sufficient to raise a presumption of nonpayment. In Virginia, a presumption of nonpayment may arise as to bank debts. *See, e.g., Wool v. NationsBank of Virginia, N.A.*, 448 S.E.2d 613 (Va. 1994); *Schmitt*, 143 S.E. 884; *Federal Financial Co. v. Applied Resources, Inc.*, No. 141098, 1996 WL 1065547 (Va. Cir. Ct. May 29, 1996). Although "not a strong presumption," possession of a valid note is sufficient to raise the presumption of nonpayment. *Schmitt*, 143 S.E. at 886. *See also Wool*, 448 S.E.2d at 615; *Federal Financial Co.*, 1996 WL 1065547, at *2. The presumption of nonpayment "is based on the theory of probabilities, on the common experience that, when a note is paid, the payer usually secures its possession or has it stamped 'Paid.'" *Schmitt*, 143 S.E. at 886.

Here, the Court holds that a presumption of nonpayment is raised for four (4) reasons. First, there is no dispute that on

May 30, 1995, Plaintiffs visited a First Union Bank of Virginia branch to obtain a total of $250,000 in certificates of deposit. (J. Dashtara Cert. ¶ 2.) Second, Defendant does not contest the validity of the CDs that were actually presented for payment, and acknowledges that the format of the three certificates of deposit is the same as that used by First Union Bank of Virginia in the mid-1990s. (Hines Dep. 64:22-65:2.) Third, the three certificates of deposit bear no markings to indicate that the CDs have already been paid. (Pls.' Mot., Ex. 1.) Fourth, the Dashtaras are still in possession of the CDs, which suggests that the CDs were not previously presented for payment. The Court finds these facts sufficient to raise a presumption of nonpayment.

### 2. Defendant Wachovia – Proof of Payment

The Court holds that Defendant fails to establish payment as a defense because Wachovia points to no affirmative evidence that the CDs have been paid. A defendant may rebut a presumption of nonpayment by pointing to affirmative evidence of payment. *See Schmitt*, 143 S.E. at 886. Payment is "an affirmative defense and where an indebtedness or obligation to pay has been established, the burden of proving payment is on the party who alleges it." *Snidow v. Woods*, 96 S.E.2d 157, 159 (Va. 1957) (internal citations omitted); *Federal Financial Co.*, 1996 WL 1065547, at *2.

Here, the Court finds that Wachovia fails to establish payment as a defense for two (2) reasons. First, an absence of records is insufficient to show payment. Wachovia contends that it must have paid the CDs because Wachovia does not destroy records of live, unpaid certificates of deposit and Wachovia has located no record on its systems regarding any of these three CDs. (Himes Decl. ¶ 5.) Wachovia's reasoning is flawed because the *absence* of records does not *prove* payment. See Wool, 248 Va. at 386-87 (noting that the defendant bank's records retention policy that allowed for destruction of records after ten years was insufficient to prove payment because "[w]hile such a records retention program may be in compliance with industry standards, it does not constitute evidence of payment."). As such, Defendant cannot point solely to its lack of records to show that it previously paid on the CDs.

Second, it is plausible that Wachovia lacks records of the certificates due to internal fraud or Wachovia's error. As Ms. Cathy Himes acknowledged during her deposition, an absence of records in Wachovia's system could signify either that payment was made to a proper party or that someone within the bank forged a lost certificate affidavit and converted the money to his or her benefit. (Himes Dep. 76:8-77:20.) She further testified at her deposition that departments within the bank had requested that she research suspected internal fraud concerning CDs in the

past. (Himes Dep. 58:1-59:17.) Wachovia points to no facts indicating that this type of activity could not have occurred as to the Dashtara certificates. Hence, the Court holds that Wachovia's lack of records as to the certificates of deposit is insufficient evidence of payment.

The Court finds Wachovia's other arguments equally unavailing. First, Defendant challenges Plaintiffs' assertion that they "promptly forgot" about the CDs, but Defendant offers no affirmative evidence to show payment. Second, Defendant points to Plaintiffs' son, Keya Dashtara, as potentially playing some part in cashing the certificates without Plaintiffs' knowledge. This argument is irreconcilable with Defendant's argument that the CDs were redeemed before 1997, as the Dashtara's son was under sixteen years old at that time and was unable to drive as late as 1995. (J. Dashtara Cert. ¶ 15.) The Court finds it highly unlikely that Wachovia would allow a high-school student to walk into a branch and cash certificates valued at a quarter of a million dollars without so much as presenting the actual CDs. As such, the Court grants summary judgment in favor of the Dashtaras.

## B. *Statutes of Limitations*

The Court also holds that Plaintiffs' claims for unpaid interest are not barred by the statutes of limitations because the CDs were made new each year on their maturity date through the automatic renewal provision. An action to enforce a party's obligation to pay a certificate of deposit must be commenced within six years after the demand for payment was made. VA. CODE ANN. §§ 8.3A-118 & 118.1.

Wachovia argues that, while sections 8.3A-118 and 118.1 apply as to the principal amount deposited, Virginia's five-year statutes of limitations for breach of contract and conversion, VA. CODE ANN. §§ 8.01-246(2) and 8.01-243(B), respectively, apply as to interest because Plaintiffs' certificates called for monthly interest payments but sections 8.3A-118 and 118.1 apply only were interest is set to accrue over time. Wachovia argues that each missed payment constituted a breach and that Plaintiffs' cause of action accrued when each breach occurred. As a result, Wachovia argues that Plaintiffs' claims for unpaid interest due more than five years before their lawsuit are barred by the statutes of limitations.

Wachovia's argument fails because, regardless of which statutes of limitations apply, Plaintiffs possess automatically renewable CDs which became new CDs, and therefore created a renewed obligation, each year on the maturity date. Under the

terms of the CDs, the three certificates each automatically renewed on May 30 of each year at the "current offering [interest] rate." As stated in the Deposit Agreement and Disclosures:

> **Automatic Renewal.** Unless we redeem your CD or the CD is presented for payment on the initial or any subsequent maturity date or within the grace period, this CD will be extended for a time period equal to the initial term beginning at the initial maturity date or at each subsequent maturity date. The interest rate for each renewal term will be the current offering rate in effect on the maturity date for the term just ended.
>
> [and]
>
> **Interest Added to Principal.** If the interest earned during the initial or subsequent term [of any automatically renewable CDs] is not withdrawn on the maturity date or within the grace period after the term when earned, it will be added to and made a part of the principal.

(Deposit Agreement at 63.)

As a result of the automatic renewal provision, if First Union Bank of Virginia breached its obligation to pay interest from the very first month and failed to pay interest each successive month thereafter during the initial 1995-96 term, nonetheless, on the first May 30 maturity date, 1) each of the certificates would have automatically been made new, and 2) the principal amount of those new 1996-97 Certificates would have automatically been the amount of the previous year's (here, the intitial year's) principal amounts plus "interest earned during the initial or subsequent term . . . added to and made a part of

11

the principal." Therefore, on May 30 of each year, the Dashtaras automatically received three made-new CDs, each with commensurately higher principal amounts based on the certificates' accrued but unpaid interest. Hence, the statute of limitations does not prevent Plaintiffs from claiming all unpaid interest accrued on the CDs.

C. *Calculation of Damages*

The Court awards damages to Plaintiffs in the amount of $420,200.08, plus interest. As an initial matter, it is undisputed that the three certificates of deposit have a combined face value of $250,000. The Court addresses its computation of accrued interest below.

1. Accrued interest

The Court awards Plaintiffs $170,200.08 in interest accrued from May 30, 1995, the CDs' date of issuance, to July 10, 2008, the date of presentment. Under Virginia law,

> [t]he amount or rate of interest may be stated or described in the instrument in any manner and may require reference to information not contained in the instrument. If an instrument provides for interest, but the amount of interest payable cannot be ascertained from the description, interest is payable at the judgment rate in effect at the place of payment of the instrument and at the time interest first accrues.

VA. CODE ANN. § 8.3A-112(b).

As to the present case, the terms of the Deposit Agreement and Disclosures state that interest on the three CDs was to be

calculated as follows:

> **Interest Calculation.** We use the daily balance method to calculate the interest on your account. This method applies a daily periodic rate to the principal balance in your account each day. The principal balance used is the book balance or the balance on deposit. Interest will be compounded daily from the date of issue. Interest will be paid from the day of deposit through the day prior to the maturity date. The annual percentage yield assumes that interest will remain on deposit for the term of the certificate. A withdrawal of interest will reduce earnings. Interest begins to accrue on the business day you deposit non-cash items.

(Deposit Agreement at 63.) The automatic renewal provision further provides that "[t]he interest rate for each renewal term will be the current offering rate in effect on the maturity date for the term just ended." (Deposit Agreement at 63.)

Here, the Court calculates the accrued interest on the CDs by referring to the current offering rates on May 30 (the maturity date of the CDs) of each year from 1996-2008. Wachovia's current offering rates for 2002-2008 are readily ascertainable from Wachovia's records. Wachovia's current offering rates from 2002-2008 were as follows[3]:

---

[3] (Himes Dep. 15:3-16:8.)

| Date | $100,000 Certificates | $50,000 Certificate |
|---|---|---|
| May 30, 2002 | 2.32% | 2.27% |
| May 30, 2003 | 1.09% | 1.09% |
| May 30, 2004 | 1.24% | 1.24% |
| May 30, 2005 | 2.96% | 2.86% |
| May 30, 2006 | 3.34% | 3.20% |
| May 30, 2007 | 3.34% | 3.20% |
| May 30, 2008 | 1.50% | 1.40% |

As for the offering rates for 1996-2001, however, the Court cannot refer to Wachovia's records because Wachovia destroyed those records as part of its seven year record retention policy. As such, the Court ascertains that the accrued interest from 1996-2001 is the prevailing market rates for May 30 of each year. Under Virginia law, the interest rate must be ascertainable from the description in the note. VA. CODE ANN. § 8.3A-112(b). Here, the CDs provide that interest will be at the "current offering rate." (Deposit Agreement at 63.) There is no indication that the term "current offering rate" is reserved exclusively for Wachovia's offering rates on the dates in question. In fact, the term cannot be not restricted solely to Wachovia's offering rates because Wachovia deliberately destroys records of its offering rates after seven years. Consequently, the Court finds that the term "current offering rate" means Wachovia's rates and, in the absence of records of Wachovia's rates, the prevailing market

14

rate on the date in question. Therefore, the Court uses the following certificate of deposit market interest rates as reported by the *Wall Street Journal* for the dates in question[4]:

| Date | $100,000 Certificates | $50,000 Certificate |
|---|---|---|
| May 30, 1996 | 5.28% | 5.28% |
| May 30, 1997 | 6.02% | 6.02% |
| May 30, 1998 | 5.71% | 5.71% |
| May 30, 1999 | 4.97% | 4.97% |
| May 30, 2000 | 6.70% | 6.70% |
| May 30, 2001 | 3.93% | 3.93% |

The Court rejects Wachovia's "connect-the-dots" method[5] of calculating accrued interest from 1996-2001 because it is not described in the Deposit Agreement and Disclosures. Virginia law requires that the rate of interest be sufficiently stated or

---

[4] (J. Dashtara Cert., Exs. 4, 5 & 7.) Defendant received notice of Plaintiffs' intention to rely upon the prevailing market rates reported by the *Wall Street Journal*, (J. Dashtara Cert., Ex. 5), but did not oppose use of these rates to calculate interest. Plaintiffs' interest calculations, (J. Dashtara Cert., Ex. 7), are also unopposed.

[5] For offering rates more than seven years old, Wachovia employs a "connect-the-dots" approximation, whereby Wachovia looks at the original offering rate (in this case, the offering rate on May 30, 1995) and the first known offering rate (here, the rate for May 30, 2002) and assumes that its "current offering rate" diminished during the years in between. Based on that assumption, Wachovia extrapolates offering rates for those years, with the offering rate steadily diminishing from one year to the next.

described in the instrument. *See* VA. CODE ANN. § 8.3A-112(b). Here, however, the certificates' terms provide only that interest will be calculated at the current offering rate; they do not mention or describe Wachovia's "connect-the-dots" method of calculation. As such, the Court awards Plaintiffs $170,200.08 in interest accrued from May 30, 1995, to July 10, 2008.

### 2. Prejudgment interest

The Court awards Plaintiffs prejudgment interest on $420,200.08 ("Judgment Amount") at six percent (6%) from July 10, 2008, through the date of this Order. Virginia law provides that "[i]f a contract or other instrument does not fix an interest rate, the court shall apply the judgment rate of six percent to calculate prejudgment interest . . . ." VA. CODE ANN. § 6.1-330.54. As such, the Court awards prejudgment interest at six percent (6%) from July 10, 2008, through the date of this Order.

### 3. Post-judgment interest

The Court awards Plaintiffs post-judgment interest on the Judgment Amount at six percent (6%) from the date of this Order. Under Virginia law, where the instrument does not fix an interest rate, the court applies the judgment rate of six percent to calculate post-judgment interest. *See* VA. CODE ANN. § 6.1-330.54. As such, the Court awards post-judgment interest at six percent (6%) from the date of this Order.

IV. CONCLUSION

The Court grants summary judgment for Plaintiffs John and Nashrin in the amount of $420,200.08, plus interest, for three (3) reasons. First, the Court holds that possession of valid certificates raises a presumption of nonpayment and Wachovia's reliance upon its absence of records fails to rebut the presumption. Second, the Court holds that the statute of limitations has not run on unpaid interest due more than five years before the filing of the Complaint because the automatic renewal provision created "new" certificates on the maturity date each year and the unpaid interest becomes part of the new certificates' principal. Third, the Court holds that interest accrued from 1996 through 2001 is properly calculated using the certificate of deposit market rates reported in the *Wall Street Journal* because the term "current offering rate" is not limited to Wachovia's specific offering rate where Wachovia has destroyed records as part of its records retention policy. For the foregoing reasons, it is hereby


ORDERED that Plaintiffs' Motion for Summary Judgment is GRANTED. It is further


ORDERED that JUDGMENT is ENTERED in favor of Plaintiffs John and Nashrin Dashtara against Defendant Wachovia Bank, N.A., in

the amount of $420,200.08, plus interest. It is further

ORDERED that Defendant Wachovia Bank, N.A., pay prejudgment interest to Plaintiffs John and Nashrin Dashtara on the Judgment Amount at the interest rate of six percent (6%) as set forth in Virginia Code § 6.1-330.54, from July 10, 2008, the date of presentment, up through and including the date of this Order. It is further

ORDERED that Defendant Wachovia Bank, N.A., pay post-judgment interest to Plaintiffs John and Nashrin Dashtara on the Judgment Amount at an interest rate of six percent (6%) as set forth in Virginia Code § 6.1-330.54, from the date of this Order.

The Clerk is directed to forward a copy of this Order to counsel.

Entered this 13th day of August, 2009.

Alexandria, Virginia

08/13/09

/s/
Gerald Bruce Lee
United States District Judge